Edward W. Swanson (SBN 159859)
August P. Gugelmann (SBN 240544)
SWANSON & McNAMARA LLP
300 Montgomery Street, Suite 1100
San Francisco, CA 94104
Telephone: (415) 477-3800
Facsimile: (415) 477-9100
Email: ed@smllp.law
Email: august@smllp.law

Attorneys for ELANGOVAN PUNNIAKOTI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> ELANGOVAN PUNNIAKOTI, <br><br> Defendant. | No. CR 22-0139 EJD <br><br> **DEFENDANT'S SENTENCING MEMORANDUM** <br><br> Date:  August 3, 2026 <br> Time:  1:30 pm <br> Court: Hon. Edward J. Davila |

Defendant Elangovan Punniakoti stands convicted by guilty plea of submitting false documents in support of visa applications for individuals seeking work in the United States. He accepts responsibility for his conduct and expresses remorse to the Court for his actions . He respectfully requests that the Court impose a ten-month sentence, with half to be served in custody and half in community confinement or on home detention.

As set forth herein, the PSR and the government sentencing memo both miscalculate Mr. Punniakoti's guidelines by attributing to him an aggravating role that is not supported by the evidence. Without this erroneous enhancement, he faces guidelines of 12-18 months. Given his history and characteristics, and given the serious immigration consequences he will face, a split sentence of ten months is sufficient, but no greater than necessary, to meet the goals of sentencing.

## I.    Guidelines and PSR

Mr. Punniakoti has no objections to the Presentence Report's factual recitations. However, he objects to the guidelines calculations contained in the PSR and in the government's sentencing memorandum.[1] To summarize, he agrees that the base offense level is 11 and that 6 levels are added based on the number of fraudulent documents at issue. However, he disagrees with the addition of two levels for aggravating role. In the absence of an this enhancement, an additional two-level decrease for being a zero-point offender should apply. Because the government declines to move for a third level reduction for acceptance of responsibility, Mr. Punniakoti agrees that only a two-level reduction is appropriate. This yields an adjusted offense level of 13 (rather than 16 or 17 as calculated by Probation and the government, respectively).

### A.  The Court should decline to impose an enhancement based on Mr. Punniakoti's role in the business.

Section 3B1.1(c) provides for a two-level increase "if the defendant was an organizer, leader, manager, or supervisor" in a criminal activity that did not involve five or more participants or was not otherwise extensive. The PSR applies this adjustment on the grounds that

---

[1] Predecessor counsel in this matter did not make any objections to the PSR or file a sentencing memorandum. Accordingly, these objections are being raised for the first time here.

1

Mr. Punniakoti "aided, counseled, and directed Christeena with respect to the visa applications prior to their submission to USCIS, intending to facilitate the visa fraud offense." PSR ¶ 38. Because there are no facts in the PSR or in the record to support this enhancement, the Court should decline to apply it. *United States v. Whitney*, 673 F.3d 965, 976 (9th Cir. 2012) ("[A] sentencing court may not conclude that an enhancement is appropriate where the record lacks evidence that the defendant exercised the requisite control—even if the presentence report states that it is. To the contrary, there must be reference in the record to any specific facts that indicate the defendant exercised control over or organized others in committing this crime.") (citation and quotation omitted).

### i.  Legal standard

As a threshold matter, and contrary to the suggestion in the PSR, the enhancement does not lie where a defendant "aided" or "counseled" another participant. PSR ¶ 38. Instead, "some degree of control or organizational authority over others is required." *United States v. Mares-Molina*, 913 F.2d 770, 773 (9th Cir. 1990). "A defendant 'organizes' other participants if he has the necessary influence and ability to coordinate their behavior so as to achieve the desired criminal results." *United States v. Holden*, 908 F.3d 395, 403 (9th Cir. 2018) (internal alterations and citation omitted); *see also United States v. Avila*, 95 F.3d 887, 890 (9th Cir. 1996) (stating that "some degree of control or organizational authority over others is required" for the enhancement) (internal quotation omitted).

Without exercise of control or authority, "[m]ere facilitation of criminal activity is not sufficient to support the enhancement." *Holden*, 908 F.3d at 402-03. Thus, instructing or giving guidance to another participant on how to execute an offense is not enough. In *Holden,* the court found that a defendant who instructed another participant how to deposit funds facilitated the crime, but that conduct did not justify an enhancement. *Id.* at 403. As the *Holden* court explained, "if Defendant 'organized' Sharp by telling him how to go about making deposits, then it would follow that nearly every co-conspirator in a limited conspiracy of equals would be an 'organizer' of his or her comrades, and the enhancement of § 3B1.1(c) would be all but automatic for all conspirators in such cases." *Id.* at 403. Similarly, a defendant who only

"supplied [a co-conspirator] with tax forms and information on filing false returns" was not subject to the enhancement. *Whitney*, 673 F.3d at 975-76; *see also United States v. Harris*, 999 F.3d 1233, 1236-37 (9th Cir. 2021) ("Though there may be some direction inherent in a suggestion, the Guidelines are clear that a suggestion is not enough for application of the enhancement.").

The Application Notes direct courts to consider the following in determining whether the evidence shows the requisite level of control over others:

> Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1, Application Note 4. Case law also makes clear that, without proof of control or authority, relative culpability cannot trigger the enhancement. *See, e.g.*, *United States v. Pimentel–Lopez*, 859 F.3d 1134, 1143-44 (9th Cir. 2016) ("[E]ven a defendant with an important role in an offense cannot receive an enhancement unless there is also a showing that the defendant had control over others.") (quotation omitted); *United States v. Hoac*, 990 F.2d 1099, 1111 (9th Cir. 1993) (finding that the fact that a defendant was "one of the more culpable defendants" did not demonstrate that he "exercised control over others or was responsible for organizing others so as to justify an increase") (quotation omitted).

### ii.  No enhancement is warranted under the facts of this case.

Nothing in the PSR, the government's sentencing memorandum, or the underlying facts of this case shows that Mr. Punniakoti had the requisite authority or control over Mary Christeena, the only other participant in this offense, to justify imposition of the enhancement.

Turning first to the PSR, that document sets forth no facts in support of its conclusion that Mr. Punniakoti "aided, counseled, and directed [Mary Christeena] with respect to those applications." PSR ¶ 29. As noted above, to the extent Mr. Punniakoti "aided" or "counseled" Ms. Christeena, that cannot support the enhancement. As to whether he "directed" her, the defendants' positions at Innovate Solutions gave them comparable authority: Mr. Punniakoti

3

"served as the company's Chief Executive Officer (CEO) and vice president, while Mary Christeena … served as secretary, director, and president." *Id.* at ¶ 7. In describing the offense, the PSR notes no differentiation between the defendants' respective roles but describes them as participating equally. It recounts that "Punniakoti and Christeena caused to be submitted, and aided and abetted the submission of approximately 54 fraudulent H-1B visa applications." *Id.* at ¶ 13; *see also* ¶¶ 22-25. Mr. Punniakoti's conduct was more extensive in that he submitted some documents without Ms. Christeena's involvement (*id.* at ¶¶ 15, 26, 27), but nothing in the PSR suggests that Ms. Christeena was acting at his direction or under his supervision, rather than as a partner in the enterprise. To the contrary, all of the offense conduct is described as having been carried out by the two of them together: they both "engaged in legitimate business" with certain companies and then "used information and signatures obtained from" those companies "to prepare false documents" (*id.* at ¶¶ 17, 18); they both knew certain end user companies "would not actually employ workers listed in the visa applications" (*id.* at ¶ 19); they both knowingly submitted "documents falsely representing that [a] beneficiary would work as an in-house software developer at Innovate Solutions" (*id.* at ¶ 21); and they both "falsely represented Innovate Solutions's number of employees and gross annual revenues" (*id.*).

The government's sentencing memorandum likewise contains no facts to support the aggravating role enhancement, instead simply citing the PSR's conclusion. Dkt. 146, 2.[2] And the discovery reveals that Mr. Punniakoti was not a manager or supervisor of Ms. Christeena. In 2019—long before either defendant could have appreciated the potential effect of their statements on the sentencing guidelines—the defendants were interviewed and answered extensive questions about how Innovative Solutions operated. They described a company in which authority and responsibilities were divided between the two of them. They explained that:

---

[2] The government's forfeiture memo claims that Mr. Punniakoti "directed his wife regarding the fraudulent visa petitions and supporting documents, including to sign LCAs, employment agreements, and statements of work supporting the false end-client representations in the visa petitions." Dkt. 149, 3. But it also cites no evidence for this other than the PSR's conclusion. No facts in the PSR support the specific claims in the forfeiture memo about Mr. Punniakoti's supposed directives to Ms. Christeena.

**Defendant's Sentencing Memorandum**
*United States v. Punniakoti*, CR 22-0139 EJD

- Mr. Punniakoti and Ms. Christeena were both owners of the company (Exh. D at INN-00017674);

- both Mr. Punniakoti and Ms. Christeena interviewed and pre-screened potential beneficiaries before referring them to client companies (Exh. D at INN-00017695);

- both Mr. Punniakoti and Ms. Christeena provided information to counsel to complete Labor Condition Applications (LCA) and Petitions for Nonimmigrant Work (Form I-129) and assembled the supporting documents for submission to CIS (Exh. D at INN-00017699-700);

- Ms Christeena handled HR and accounting while both recruited of potential beneficiaries (Exh. D at INN-00017678-79 and 17692-93);[3]

- both Mr. Punniakoti and Ms. Christeena signed Forms I-129 (Exh. D at INN-00017707); and

- both Mr. Punniakoti and Ms. Christeena reviewed applications before final submission (Exh. D at INN-00017708).

Similarly, the companies and individuals with whom they dealt did not note any difference in their roles, with beneficiaries of H1-B applications describing Ms. Christeena as a co-owner of the business,[4] as the person who "handled HR," "HR matters," and "recruitment,"[5] and as the "president"[6] or vice-president[7] of the company.

Thus, the evidence reveals that Mr. Punniakoti and his wife had shared authority at Innovate Solutions and were comparable participants in the scheme, even if Mr. Punniakoti is more culpable by virtue of having prepared or submitted more fraudulent documents. *See Holden*, 908 F.3d at 402 (rejecting enhancement where the defendant and the other participant "were 'co-equal' conspirators—neither was 'in charge' of the other"); *Hoac*, 990 F.2d at 1111 n.8 (rejecting enhancement where "the only evidence that could arguably support an increase under § 3B1.1(c) is [defendant's] statement that he and [another participant] were partners"). Turning to the Advisory Note's enumerated factors, there is no evidence that Mr. Punniakoti exercised decision-making authority, that the nature of his participation reveals any degree of control, that he recruited accomplices, that he claimed a larger share of the proceeds, that he had

---

[3] The transcript on the latter point is not entirely clear. Initially Mr. Punniakoti appears to say that he handled recruiting, but later Ms. Christeena appears to say that she did.

[4] Exh. D at INN-00016169, INN-00016892, INN-00018092, INN-00016918.

[5] Exh. D at INN-00016870, INN-00016720, INN-00016672, INN-00018174, INN-00017032.

[6] Exh. D at INN-00016884.

[7] Exh. D at INN-00019191.

5

**Defendant's Sentencing Memorandum**
*United States v. Punniakoti*, CR 22-0139 EJD

a more significant role in "planning or organizing the offense," or that he exercised any "degree of control and authority" over Ms. Christeena's participation in the crime. Accordingly, the Court should not apply the two-level aggravating role enhancement.

**B. The Court should apply a two-level reduction given Mr. Punniakoti's zero-point offender status.**

With certain exceptions, defendants like Mr. Punniakoti who have no criminal history points are entitled to a two-level reduction. U.S.S.G. § 4C1.1. One such exception provides that no reduction is available for a defendant who receives an aggravating role adjustment. U.S.S.G. § 4C1.1(a)(10). Because Mr. Punniakoti should not receive an aggravating role adjustment, and because none of the other exceptions in § 4C1.1 applies, he is eligible for the two-level reduction.

**C. Final guidelines calculations**

Based on the foregoing, Mr. Punniakoti submits that the guidelines should be calculated as follows:

| | |
|---|---|
| Base offense level (§ 2L2.1(a)) | 11 |
| 25-99 fraudulent documents (§ 2L2.1(b)(2)(A)) | +6 |
| Zero-point offender (§ 4C1.1) | -2 |
| Acceptance of responsibility (§ 3E1.1(a)) | -2 |
| Adjusted offense level | 13 |

At offense level 13 and Criminal History Category I, the advisory guidelines range is 12-18 months. According to JSIN, the average term for defendants in this range who were sentenced to custody was 10 months, and the median was 12 months. When defendants who received probationary terms are included, the average sentence was 9 months, and the median was 11 months.

**II.    Mr. Punniakoti requests that the Court impose a split sentence of ten months.**

The government recommends a sentence of 24 months, at the low end of the guidelines as it calculates them. Dkt. 146, 1. The Probation Officer recommends a 14-month sentence, reflecting a seven-month variance below the low end of its calculated guidelines range. PSR Recommendation, 1. Whether or not the Court agrees with Mr. Punniakoti's guidelines calculations set forth above, he respectfully requests that the Court impose a sentence of ten

**Defendant's Sentencing Memorandum**
*United States v. Punniakoti*, CR 22-0139 EJD

months, split between custody and community confinement or home detention. This sentence, which would impose a term in line with the averages for similar defendants, avoids the harshest immigration-related penalties Mr. Punniakoti will face, is reasonable in light of his history and characteristics, and is sufficient to fulfill the statutory goals of sentencing.

### A. A sentence of less than 12 months ameliorates the inevitable immigration consequences of Mr. Punniakoti's conviction.

Mr. Punniakoti is a citizen of India and a lawful permanent resident of the United States. Declaration of Daniel J. Roten (Exh. C), ¶ 3. His convictions here will have significant immigration consequences, but those consequences will be especially severe if he receives a sentence of a year or more. This is because the Immigration and Nationality Act defines a conviction under 18 U.S.C. § 1546(a)—the statute of conviction here—as an aggravated felony if "the term of imprisonment is at least 12 months." 8 U.S.C § 1101(a)(3)(43)(P). If he is convicted of an aggravated felony, Mr. Punniakoti will be deported. 8 U.S.C. § 1227(a)(2)(A)(iii). If he is not, he will still face deportation proceedings, but he will be eligible to seek cancellation of removal. Cancellation of removal is a discretionary form of relief that can be granted by the Attorney General, and it is by no means a given that Mr. Punniakoti will receive it despite his lack of prior criminal conduct and his 25-year history in this country. But with a sentence of a year or more, he will not be eligible to even seek such relief.[8]

Imposition of a term of a year or more will have other adverse consequences in Mr. Punniakoti's removal proceedings. Specifically, he will no longer be allowed to seek bail and will be held in mandatory ICE detention following his release from BOP. 8 U.S.C. ¶ 1226(c)(1)(B); Roten Decl. ¶ 4. This will limit his ability to contest deportation, as "access to counsel is extremely constrained under the current DHS administration." Roten Decl. ¶ 4.

### B. A split sentence of ten months is reasonable in light of Mr. Punniakoti's history and characteristics.

A ten-month sentence is reasonable in this case given Mr. Punniakoti's history and characteristics, including the burdens that incarceration will impose on his family. Mr.

---

[8] Individuals may apply for cancellation of removal if they have been lawful permanent residents for at least 5 years, have resided continuously in the United States for at least 7 years, and have not been convicted of an aggravated felony. 8 U.S.C. § 1229b(a).

**Defendant's Sentencing Memorandum**
*United States v. Punniakoti*, CR 22-0139 EJD

Punniakoti was raised in India and immigrated to the United States over 25 years ago. As the letters in his support attest, his life has been marked by hard work, respect for others, and a remarkable generosity.

Rev. Ranjan Samuel, who has known Mr. Punniakoti for 20 years, writes that Mr. Punniakoti is "a respected and trusted member of our church family, known for his integrity, honesty, reliability, and sense of responsibility." Samuel Ltr (Exh. B). He is generous in his financial support of the church, but he and his family also "willingly step forward whenever there is a need, whether assisting with church events, supporting ministries, or helping others quietly without seeking recognition. Their service has always been marked by humility and a genuine desire to contribute." *Id.* Assistant Pastor Stephen Prabhakar likewise calls Mr. Punniakoti "a devoted father, a supportive husband, and a respectful and cooperative member of the church community." Prabhakar Ltr (Exh. B). Mr. Punniakoti's generosity is remarked upon over and over again in these letters. His friend Barthelom Joseph writes that Mr. Punniakoti "shares his time, knowledge, and energy without hesitation." He recounts that, when his father passed away, "I called Elango at three o'clock in the morning, and he arrived at our home within twenty minutes" and proceeded to organize and assist with Mr. Joseph's trip to India, booking tickets, helping pack, and driving him to the airport. Joseph Ltr. (Exh. B). Mr. Punniakoti's neighbor writes that he is "first to notice if a neighbor needs a hand—whether it's helping move heavy furniture, offering his time and expertise in finding work for people looking for one, or simply providing a calm, listening ear during a stressful time. He doesn't help because he's asked; he helps because it is his natural instinct to contribute to the well-being of those in our neighborhood." Venkatesh Ltr. (Exh. B). And his son shares that "My dad taught me that it's okay to give, that knowledge is meant to be shared, and that helping others isn't a burden but a privilege. … I've watched him drop everything to help the people he cares about without ever asking for recognition, time and time again." Joel Ltr.

The letters in support also describe the significant stress that this case, coupled with a series of serious medical issues in Mr. Punniakoti's family, has caused. Both Mr. Joseph and Ajay Mohite praise Mr. Punniakoti for "continu[ing] to support his extended family financially

and emotionally" and "remain[ing] a dedicated and present father to his children throughout" his wife's diagnoses and treatment for breast cancer and his mother-in-law's Parkinson's. Joseph Ltr. (Exh. B); *see* Mohite Ltr. (Exh. B) (describing Mr. Punniakoti as "continu[ing] to care for his family with patience, perseverance, and selflessness while maintaining a positive attitude and encouraging others" despite his own stressors). Mr. Punniakoti's family continue to face serious medical issues. As noted above, his wife was diagnosed with breast cancer and is undergoing hormone therapy following surgery and radiation treatment; Mr. Punniakoti writes that this causes blood pressure spikes that are "very stressful and impact[] on a psychological and emotional level for which she needs my constant attention and help on a daily basis." Punniakoti Ltr. (Exh. A). In addition, like his mother-in-law, Mr. Punniakoti's brother is also suffering from Parkinson's. The recommended sentence will allow Mr. Punniakoti to continue to provide care for his ailing family members while on home detention or community confinement.

The offense conduct here was serious, and Mr. Punniakoti accepts responsibility and seriously regrets his choices. But in light of his history and characteristics, considering a lifetime of law-abiding conduct and service to his family and community, a ten-month sentence is reasonable.

### C. A ten-month split sentence satisfies the remaining statutory purposes of sentencing.

The requested sentence is also sufficient, but no greater than necessary, to fulfill the remaining statutory purposes of sentencing under 18 U.S.C. § 3553(a). If the Court adopts Mr. Punniakoti's proposed guidelines calculations, it is in line with the average sentence imposed in comparable cases. Even if the Court disagrees, a ten-month sentence for a first, non-violent offense, coupled with a significant forfeiture,[9] a fine, and all the collateral consequences of a felony—including, most devastatingly to Mr. Punniakoti and his family, likely deportation—adequately reflects the seriousness of the offense, promotes respect for the law, and deters others.

---

[9] The government has filed a motion seeking $2,555,725 in forfeiture. Dkt. 149. Mr. Punniakoti understands that the government is in fact seeking slightly less than that amount ($2,385,205.72).

9

**Defendant's Sentencing Memorandum**
*United States v. Punniakoti*, CR 22-0139 EJD

The requested sentence is also sufficient to deter future criminal conduct. As the Court is aware, Mr. Punniakoti has no prior arrests or even encounters with the law, much less convictions. PSR ¶¶ 46-49. And he has continued to operate Innovate Solutions for the past six years without issue. He has thoroughly accepted responsibility and has learned his lesson. As he writes to the Court, "I spent sleepless nights thinking of the troubles that could have been avoided, had I made a few decisions differently. The years that have been lost in remorse are just too many." Punniakoti Ltr. One particularly painful aspect of this process has been that it has cost him time with his family, which is all-important to him. He writes that "one of our most treasured things to do is to visit our family in India, and I regret that my actions have made it so much harder to do that." *Id.* As his friend Mr. Mohite writes, Mr. Punniakoti "has expressed genuine remorse regarding the circumstances that brought him before the Court and fully understands the seriousness of the situation. I sincerely believe he has reflected deeply on these events and is committed to moving forward with integrity, learning from this experience, and continuing to live according to the values he has consistently demonstrated throughout the years I have known him." Mohite Letter (Exh. B).

## III.    Conclusion

Mr. Punniakoti respectfully requests that the Court decline to impose a sentencing enhancement for aggravated role and that, regardless of its guidelines calculations, the Court sentence Mr. Punniakoti to a term of ten months, split between custody and community confinement or home detention.

Dated:  July 28, 2026                                      Respectfully submitted,

                                                                        /s/
                                                            Edward W. Swanson
                                                            August Gugelmann
                                                            SWANSON & McNAMARA LLP
                                                            Attorneys for Elangovan Punniakoti

**Defendant's Sentencing Memorandum**
*United States v. Punniakoti*, CR 22-0139 EJD